UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMIE MICCIO,

                Plaintiff,

      v.

CONAGRA FOODS, INC., SIMONIZ USA,
INC., EPIC INDUSTRIES, INC., and KECK'S
FOOD SERVICE, INC.,

                Defendants.
_____

**DECISION AND ORDER**

6:16-CV-006140 EAW

## INTRODUCTION

Plaintiff Jamie Miccio ("Plaintiff") brings this action for damages in relation to the injuries sustained from an alleged explosion of a can of Keck's Premium Food Release Spray at her place of work. She predicates her suit on the theories of strict liability—including design defect, manufacturing defect, and failure to warn—breach of express and implied warranty, and negligence. (Dkt. 26-3). Defendant ConAgra Foods, Inc. ("Defendant") has moved to dismiss the complaint, in response and opposition to which Plaintiff has moved to amend the complaint. (Dkt. 17; Dkt. 26). Defendant contends that the proposed amended complaint still leaves three claims that fail to state a claim upon which relief may be granted: manufacturing defect, breach of express warranty, and negligence. (Dkt. 29).

## FACTUAL BACKGROUND

Plaintiff brings strict liability, breach of warranty, and negligence claims, which are based on the following factual allegations drawn from the proposed amended complaint.

On or about July 13, 2014, Plaintiff was injured when a can of Keck's Premium Food Release Spray exploded suddenly. (Dkt. 26-3 at ¶¶ 1, 10). Plaintiff was at her place of work, Sisters Family Restaurant, located in Waverly, New York, when the accident took place. (*Id.* at ¶ 11). Plaintiff, intending to make a cake, was getting eggs from the refrigerator when the cooking spray exploded—she was not using the cooking spray at that time, no one else was in the kitchen using the cooking spray, and the spray was not near any source of heat when it exploded. (*Id.* at ¶¶ 13-14). From the explosion, Plaintiff suffered severe burns over large portions of her body. (*Id.* at ¶ 15). Plaintiff has undergone months of intensive medical treatment for her injuries and has undergone significant economic loss in relation to the treatment. (*Id.* at ¶ 17). She has also suffered psychological injuries due to the explosion, including PTSD and severe anxiety. (*Id.* at ¶ 18). Her scars are permanent, disfiguring and embarrassing. (*Id.* at ¶ 19).

Plaintiff alleges past, present, and future physical and mental pain and suffering, past and future medical, hospital, rehabilitative, and pharmaceutical expenses, along with other related damages. (*Id.* at ¶ 20). She also alleges that Defendant manufactured the cooking spray, that the spray was manufactured for Epic Industries, Inc. (now Simoniz USA, Inc.), who intended to sell it wholesale, and that Keck's Food Service, Inc. purchased or acquired the spray under its own labeling and packaging and sold the

defective spray to Sisters Restaurant in the retail context on or about July 2, 2014, with delivery taking place on or about July 3, 2014. (*Id.* at ¶¶ 21-24).

## PROCEDURAL BACKGROUND

Plaintiff filed this action on March 4, 2016. (Dkt. 1). Defendant moved to dismiss the complaint on May 6, 2016. (Dkt. 17). On June 1, 2016, Plaintiff filed a cross motion to amend the complaint and a response to the motion to dismiss. (Dkt. 26). Included with Plaintiff's cross motion is a proposed amended complaint. (Dkt. 26-3). Defendant filed its reply/response to the motion to dismiss/motion to amend on June 24, 2016. (Dkt. 29). In that brief, Defendant dropped the majority of its arguments in its original motion to dismiss and continued to pursue arguments only against Plaintiff's strict liability manufacturing defect, breach of express warranty, and negligent manufacturing claims. (*Id.*). The Court granted Plaintiff's request to file a sur-reply on July 1, 2016 (Dkt. 30), and Plaintiff filed her sur-reply on July 5, 2016. (Dkt. 31).

Among the other defendants to this action, there have been a variety of cross motions and third-party complaints; however, none of these is relevant to the instant decision.

## DISCUSSION

### I. Standard of Review

#### a. Motion to Dismiss

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the party's claim for relief." *Zucco v. Auto Zone, Inc.*, 800 F. Supp. 2d 473, 475 (W.D.N.Y. 2011). In considering a motion to dismiss pursuant to Rule

12(b)(6), a court generally may consider only "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). A court should consider the motion "accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [her] 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Thus, "at a bare minimum, the operative standard requires the 'plaintiff to provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level."'" *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (citations omitted).

### b. Motion to Amend

Federal Rule of Civil Procedure 15(a) provides: "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). Generally, "[w]hile the grant or denial of such an amendment is within the discretion of the court, leave to amend should . . . be granted, absent some particular reason to deny it, such as undue delay, bad faith, or prejudice to the opposing party." *Randolph v. Lindsay*, 837 F. Supp.

2d 160, 161-62 (W.D.N.Y. 2011) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "However, 'leave to amend a complaint may be denied when amendment would be futile.'" *Neilson v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "[W]hile 'futility' is a valid reason for denying a motion to amend . . . , this is true only where it is 'beyond doubt that the plaintiff can prove no set of facts in support' of his amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999) (citations omitted).

## II. Plaintiff's Amended Complaint

Defendant does not object to Plaintiff's motion to amend and, in fact, drops several of its arguments on its motion to dismiss in response to the proposed amended complaint. Thus, the Court will use the proposed amended complaint to assess the sufficiency of Defendant's remaining arguments directed to the claims of strict liability manufacturing defect, breach of express warranty, and negligent manufacturing.

## III. Plaintiff has Sufficiently Pleaded a Strict Liability Manufacturing Defect Claim

### a. The Complaint

Plaintiff alleges in her proposed amended complaint that Defendant "carelessly allowed the specific can of cooking spray that injured Plaintiff to be manufactured and distributed into the stream of commerce when it (as opposed to other spray cans properly manufactured and distributed) was capable of exploding by simply sitting on a room temperature shelf." (Dkt. 26-3 at ¶ 42). She further alleges that there was inadequate "heat testing, pressure testing, and/or wall thickness testing of this particular cooking spray," that there was no hot water bath test of the can in question, and that there was not

adequate burst testing of the specific can. (*Id.* at ¶¶ 46-48). The complaint includes additional allegations that the bottom of the cooking spray exploded before the spray nozzle at the top allowed pressure to dislodge, demonstrating a defective bottom, as well as a possibly defective top and pressure amount. (*Id.* at ¶¶ 50-51). Plaintiff pleads, "said cooking spray canister deviated in quality and other performance standards from all of the other like units due to a defect in the manufacturing process as noted above and/or as well as improper workmanship." (*Id.* at ¶ 52). She represents that the can is in the custody of the Waverly Police Department, who will not release it without a court order, but alleges that additional defects may be realized upon testing of the canister, including those in the metal of the aluminum. (*Id.* at ¶ 53). Finally, Plaintiff alleges that the product reached Plaintiff without substantial modification and advises that Plaintiff relies upon the doctrine of *res ipsa loquitur*. (*Id.* at ¶¶ 54-55).

### b. Legal Standard

"Under New York law, 'a manufacturing defect . . . results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm,'" *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 554 (S.D.N.Y. 2016), and is "premised on the relevant product being defective because it was not manufactured as designed." *Cavanagh v. Ford Motor Co.*, No. 13-cv-4584(JS)(WDW), 2014 WL 2048571, at *3 (E.D.N.Y. May 19, 2014).

"To state a claim for manufacturing defect under theories of strict liability, negligence, or breach of warranty, the plaintiff must allege that (1) the product was defective due to error in the manufacturing process and (2) the defect was the proximate

cause of plaintiff's injury." *Williamson v. Stryker Corp.*, No. 12 Civ. 7083(CM), 2013 WL 3833081, at *4 (S.D.N.Y. July 23, 2013) (citing *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001)). "In order to maintain a claim based on a manufacturing defect, [a] [p]laintiff must show that the product either was not built to specifications or did not conform to the manufacturer's intended design." *Id.* (quoting *Daley v. McNeil Consumer Prods. Co, a div. of McNeil-PPC, Inc.*, 164 F. Supp. 2d 367, 374-75 (S.D.N.Y. 2001)). "In other words, a manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units." *Bertini v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 246, 257 (E.D.N.Y. 2014) (citations omitted). "A manufacturing defect claim should be dismissed if the plaintiff has not alleged that 'the particular [product] administered to her had a defect compared to other samples of that [product].'" *Id.* (citing *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 577 (E.D.N.Y. 2012)).

> Some courts have held:
>
> To plead and prove a manufacturing flaw under either negligence or strict liability, the plaintiff must show that a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction, and that the defect was the cause of plaintiff's injury.

*See, e.g., id.* at 257 (citing *Colon*, 199 F. Supp. 2d at 85 (quoting *Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 129 (1981))) (internal quotations omitted). However, as other courts have noted, "this standard was taken from *Colon v. BIC USA, Inc.*, which involved a motion for summary judgment, not a motion to dismiss." *Williamson*, 2013 WL 3833081, at *4 (citing *Ohuche v. Merck & Co., Inc.*, No 11 Civ. 2385(SAS), 2011 WL

2682133, at *2-3 (S.D.N.Y. July 7, 2011)). Such a standard would, "[u]nder some circumstances . . . require the plaintiff to possess technical or scientific knowledge about the inner workings of the product, which would contravene the notice pleading requirement of Federal Rule of Civil Procedure 8, even under the *Iqbal-Twombly* standard." *Id.* (citing *Ohuche*, 2011 WL 2682133, at *2-3).

"Moreover, it is well-settled that a plaintiff may rely upon the circumstances of an accident to prove the existence of a manufacturing defect if the product did not perform as intended and the possibility of other causes has been excluded." *Id.* at *5 (citing *Sanchez v. Stanley-Bostitch, Inc.*, No. 98 Civ. 0494(LMM), 2000 WL 968776, at *2 (S.D.N.Y. July 13, 2000)) (not requiring the plaintiffs to allege specific facts about the manufacturing process); *see also Arnold v. Krause, Inc.*, 232 F.R.D. 58, 71 (W.D.N.Y. 2004) (holding that the plaintiff's allegations that the plaintiff was using the ladder at issue in the manner intended and for the purposes expected by the defendants and in a manner reasonably foreseeable to the defendants when the ladder collapsed and injured the plaintiff sufficiently established a *prima facie* case that the ladder was defectively manufactured), *aff'd and adopted*, 233 F.R.D. 126 (W.D.N.Y. 2005); *Speller v. Sears, Roebuck & Co.*, 100 N.Y.2d 38, 41 (2003) ("New York has long recognized the viability of this circumstantial approach in products liability cases.").

However, "to proceed in the absence of evidence identifying a specific flaw, a plaintiff must prove that the product did not perform as intended and exclude all other causes for the product's failure that are not attributable to defendants." *Id.* Further, "to prove a manufacturing defect by direct evidence, a prima facie case cannot be established

without proof that the defect existed when the product left the manufacturer." *Van Deusen v. Norton Co.*, 204 A.D.2d 867, 868 (3d Dep't 1994).

### c. Analysis

Under the two-prong test set forth in *Williamson*, Plaintiff has sufficiently pleaded a manufacturing defect. She first alleges that the product was defective due to error in the manufacturing process through inadequate or lack of testing, and states that the can deviated from all other like units "due to a defect in the manufacturing process. . . ." (Dkt. 26-3 at ¶¶ 46-48, 52). She also alleges that the exploding can was the cause of her injuries, which included the burns themselves, as well as the medical treatment, economic loss, and psychological injuries those burns have caused. (*Id.* at ¶¶ 15-19). She has alleged that the product was not built to specifications, or did not conform to the manufacturer's intended design, by alleging that the bottom of the cooking spray exploded before the nozzle could release the air, demonstrating a defective bottom, as well as alleging a possibly defective top and excess pressure within the can (*id.* at ¶¶ 50-51), and that the requisite various testings were not adequately performed (*id.* at ¶¶ 46-49). Plaintiff explicitly alleges that the unit in question deviated in quality and performance from all other identical units. (*Id.* at ¶ 42) ("[Keck's Premium Food Release Spray] (as opposed to other spray cans properly manufactured and distributed) was capable of exploding by simply sitting on a room temperature shelf.").

Even if this Court were to require the more exacting pleading standard of alleging a mishap in the manufacturing process, improper workmanship, or use of defective

materials, Plaintiff has satisfied that standard through her allegations of inadequate testing.

And, even absent Plaintiff's specific allegations about the manufacturing process, Plaintiff has pleaded a sufficient cause of action for a manufacturing defect.[1] As in *Williamson*, Plaintiff may simply rely on the "circumstances of [the] accident to prove the existence of a manufacturing defect" because the product did not perform as intended and Plaintiff has excluded the possibility of other causes. 2013 WL 3833081, at *5. Plaintiff has alleged that the cooking spray did not perform as intended because it exploded: "[C]ooking spray cans do not explode all by themselves unless some defect in their makeup existed at the time of manufacture, distribution and/or eventual final sale." (Dkt. 26-3 at ¶ 55).

Plaintiff has also alleged that neither she nor anyone else was using the cooking spray at the time of the explosion and that it was not near any source of heat, thereby ruling out other causes of the accident. (*Id.* at ¶ 14). While this does not explicitly exclude *all* possible causes of the explosion, the allegations are clear that Plaintiff was not using the spray at all, much less using the spray in the ordinary course. "Drawing all reasonable inferences in favor of Plaintiff, one can conclude that nothing she . . . did caused . . . [the canister to explode]." *Williamson*, 2013 WL 3833081, at *5. Because, "at this early stage in the litigation, prior to discovery, Plaintiff[] [does] not have all the facts to eliminate all other plausible causes [of the explosion]," it is sufficient that

---

[1] Defendant argues, "Plaintiff was required to allege the purported defect in the Spray." (Dkt. 29 at 3). As explained above, Plaintiff did so.

Plaintiff has alleged that the canister exploded, and that nothing Plaintiff did caused the explosion. *Id.* at *6. All other possible causes may be eliminated as discovery proceeds and as Plaintiff consults with an expert. *See id.* "At that point, Plaintiff[] may have the information necessary to assert specific facts about errors in the manufacturing process itself, improper workmanship, or the use of defective materials, and how such problems led to the [explosion of the can]." *Williamson*, 2013 WL 3833081, at *6 (denying a motion to dismiss a manufacturing defect claim where the plaintiff alleged knee devices did not perform as intended because they broke, even though the plaintiff did not exclude all possible causes of the break, because the plaintiff alleged that she had been using the devices in the ordinary course and had not contributed to the breaks herself).

For these reasons, Defendant's motion to dismiss Plaintiff's manufacturing defect claim is denied.

## IV. Plaintiff has not Sufficiently Pleaded a Breach of Express Warranty Claim

### a. Legal Standard

Unlike a manufacturing defect claim, "proof of a defect in the product is not an element of a cause of action for breach of express warranty." *Arnold*, 232 F.R.D. at 74. Rather, the "plaintiff must prove that the product did not perform as the manufacturer promised it would." *Sanders v. Quikstak, Inc.*, 889 F. Supp. 128, 133 n.7 (S.D.N.Y. 1995) (citing 1 Michael Weinberger, New York Products Liability § 16.02 (1982)). "A *prima facie* claim for breach of express warranty requires the plaintiff to 'show that there was an affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's

detriment.'" *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 604 (S.D.N.Y. 2010), *amended on reconsideration* (Mar. 23, 2010) (citing *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 584 (S.D.N.Y. 2008)); *see also Gelber v. Stryker Corp.*, 752 F. Supp. 2d 328, 335 (S.D.N.Y. 2010) (granting motion for summary judgment on a breach of express warranty claim where the "[p]laintiffs [had] failed to allege any affirmative statement made by [the] [d]efendants regarding the safety or effectiveness of the product on which Plaintiffs actually relied.").

### b. Analysis

Here, Plaintiff alleges, "the defendants . . . expressly warranted to the general public and to this plaintiff that their cooking spray was a product they could effectively use for cooking and that it was (1) safe for normal storage and/or use and for (2) the ordinary use intended." (Dkt. 26-3 at ¶ 82). She also states that the defendants made public statements, including advertising and other written materials that expressly warranted that the spray was safe and efficacious for its intended use. (*Id.* at ¶ 86). However, Plaintiff alleges no specific statement that was made. Instead, Plaintiff attaches an advertisement from ConAgra's website advertising its cooking spray, PAM, and attempts to point to the tagline on the advertisement, "PAM helps you pull it off," as its express warranty. (*Id.*; *Id.* at 24).

There are two problems with this. First, nowhere in the amended complaint does Plaintiff allege that PAM was the specific brand of cooking spray that exploded. The cooking spray is referred to as "Keck's Premium Food Release Spray" throughout. (*Id.* at ¶ 1). Second, the statement "PAM helps you pull it off" cannot be reasonably read as an

express statement about or promise as to the product's safety. Thus, because generalized and vague allegations that express warranties were made are not enough, Plaintiff's claim fails on the first element for lacking an allegation of an affirmative promise on the part of ConAgra as to the product's safety.

As to Plaintiff's allegation that "written materials are known to defendant[] ConAgra . . . and in [its] possession," (*Id.* at ¶ 87), implying that express warranties could be found upon discovery, this formulation fails on the second element, namely that the promise *induced* the buyer to purchase the product and that the plaintiff *relied* on the warranty to her detriment. If Plaintiff does not know what express warranties were made, any such warranties logically could not have induced her to purchase (or in this case, use) the product and she could not have relied on them to her detriment.

For these reasons, Defendant's motion to dismiss as to Plaintiff's breach of express warranty claim is granted. Plaintiff requests that this claim, if indeed dismissed, be dismissed without prejudice in order "to amend after some discovery has occurred." (Dkt. 31 at 3). The Court concludes that dismissal without prejudice would be inappropriate. Here, Plaintiff has made two attempts to plead a breach of express warranty, and she has failed.

> [T]he missing information that would cure the current complaint's deficiencies is within the exclusive knowledge of [Plaintiff], including which representations upon which [she] relied and what [her] experience[] [was] with the product[]. If those facts exist, they are available to [Plaintiff] and should have been included in at least one of the [two] complaints.

*Dimuro v. Estee Lauder Cos.*, No. 3:12CV01789(AVC), 2013 WL 12080901, at *6 (D. Ct. Nov. 19, 2013). As a result, Plaintiff's breach of warranty claim is dismissed with prejudice.

**V.   Plaintiff has Sufficiently Pleaded a Claim for Negligence**

    **a. Legal Standard**

Under New York law, the elements of negligence claims based on design defect, manufacturing defect, and failure to warn theories are the same as those under strict liability. *See Colon ex Rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 83 (S.D.N.Y. 2001) ("Courts have noted that, for the purposes of analyzing a design defect claim, the theories of strict liability and negligence are virtually identical."); *Rosen v. St. Judge Med., Inc.*, 41 F. Supp. 3d 170, 182 (N.D.N.Y. 2014) ("Under New York Law, '[t]o state a claim for manufacturing defect under theories of strict liability [or] negligence . . . the plaintiff must allege that (1) the product was defective due to an error in the manufacturing process and (2) the defect was the proximate cause of the plaintiff's injury.") (alteration in original); *Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164, 170 (W.D.N.Y. 2014) ("Under New York law, . . . the elements of a cause of action for failure to warn based on strict liability or negligence are identical.").

    **b. Analysis**

Defendant only challenges Plaintiff's negligence claim on the theory of manufacturing defect. (*See* Dkt. 29 at 4). As set forth above, Plaintiff has sufficiently pleaded a cause of action for manufacturing defect in strict liability, thus, she has sufficiently pleaded a cause of action for manufacturing defect in negligence as well.

Accordingly, Defendant's motion to dismiss as to Plaintiff's negligent manufacturing claim is denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (Dkt. 17) is granted in part as to Plaintiff's breach of express warranty claim, but otherwise denied. Plaintiff's cross motion to amend (Dkt. 26) is granted and Plaintiff must file her amended complaint in accordance with this Decision and Order by **January 3, 2017**.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: December 20, 2016
       Rochester, New York