UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| JAMIE MICCIO, | AMENDED COMPLAINT |
| Plaintiff, | |
| v. | Civ. No. 16-cv-6140 |
| CONAGRA FOODS, INC. and/or<br>SIMONIZ USA, INC. and/or<br>EPIC INDUSTRIES, INC. and/or<br>KECK'S FOOD SERVICE, INC. | |
| Defendants. | |

_____

Plaintiff Jamie Miccio, by and through the undersigned counsel, brings this complaint against the defendants, and alleges as follows:

1. This is an action for damages relation to defendants' development, testing, assembling, manufacture, packaging, labeling, preparing, distribution, marketing, supplying, and/or selling the defective product and its container sold under the name "Keck's Premium Food Release Spray" (hereinafter "cooking spray" or "canister" or "can").

**PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff, Jamie Miccio ("plaintiff"), is a citizen and resident of Lowman, County of Chemung, State of New York.

3. At all times relevant hereinafter, defendant ConAgra Foods, Inc. ("ConAgra") was and is a foreign business corporation registered in Delaware, and having its principal executive office at 11 ConAgra Drive, 11-260, Omaha, Nebraska, 68102, and which has

1

routinely conducted business in the State of New York, selling its products New York on a regular basis, both before and at the time of the events alleged herein.

4. Upon information and belief, defendant Epic Industries, Inc. ("Epic") was at the time of the events alleged herein a foreign business corporation having its principal place of business at 1007 Jersey Avenue, New Brunswick, NJ, 08901, and which as well routinely did business in New Yok, selling its products in New York on a regular basis.

5. Upon information and belief, Epic was acquired by defendant Simoniz USA, Inc. ("Simoniz") after the accident alleged herein and is now a division of Simoniz which acquired all the prior assets and liabilities of said Epic, inclusive of the tort liability addressed herein.

6. Simoniz is a foreign business corporation registered in Connecticut, and having its principal executive office at 201 Boston Tpke, Bolton, Connecticut, 06043-7603, and also routinely does business in New York, selling its products in New York on a regular basis.

7. At all times relevant hereinafter, defendant Keck's Food Service, Inc. ("Keck's") was and is a foreign business corporation registered in Pennsylvania, and having its principal executive office at 2796 Route 328, Millerton, Pennsylvania, 16936, selling and distributing its own and other products throughout New York and conducting business in New York on a regular basis.

8. Upon Information and belief, each foreign defendant noted above also has a registered agent for legal service located in this state.

9. Plaintiff claims more than $75,000 in damages.

## SUMMARY OF THE FACTS

10.     On or about July 13, 2014, plaintiff was injured when a can of cooking spray suddenly and without warning exploded gravely injuring plaintiff.

11.     At the time of the explosion, plaintiff was an employee of Sisters Family Restaurant located at 2 N Chemung Street in Waverly, New York.

12.     On the aforementioned date and at the abovementioned place, plaintiff came into work at her usual starting time, this being before said restaurant was open for service.

13.     Plaintiff, who intended to make a cake, went to get eggs from the refrigerator at said restaurant when suddenly, unexpectedly, and without warning, a nearby can of cooking spray, manufactured, sold and/or distributed by the defendants herein, exploded.

14.     The cooking spray was <u>not</u> being used by plaintiff at the time it exploded.  Nor was anyone else in the kitchen using said canister of cooking spray. Nor was it near any source of heat when it exploded.

15.     Plaintiff thereby suffered major and severe burns over an extensive portion of her body.

16.     Said burns have caused grave and serious physical damage to plaintiff, including various areas and depths to her skin and even as deep as into her musculature.

17.     Plaintiff has thereby had to undertake months of intensive medical treatment for said injuries.  She has also suffered significant economic loss in relation thereto.

18.     Plaintiff has further suffered psychological injuries in relation to said explosion, including, upon information and belief, PTSD and severe anxiety.

19.     Said injuries are permanent in nature, including disfiguring and embarrassing scars on plaintiff's body.

20. Plaintiff has suffered or will suffer past, present, and future physical and mental pain and suffering and has or will as well suffer past and future medical, hospital, rehabilitative, and pharmaceutical expenses and other related damages.

21. Upon information and belief, defendant ConAgra was the manufacturer of the aforementioned exploding cooking spray.

22. Upon information and belief, said cooking spray was manufactured for the defendant Epic (now Simoniz) who intended to sell it on a wholesale basis to others. In fact, the original labeling/packaging of said cooking spray was fashioned to reflect that it was an Epic product.

23. Upon information and belief, said defective product as described above was then purchased/acquired by defendant Keck's who intended to and did sell it on a retail basis and who affixed its own labeling/packaging to the same.

24. Defendant Keck's then sold the defective product to Sisters Restaurant on a retail basis, said sale occurring on or about July 2, 2014 with delivery of the product on or about July 3, 2014.

### COUNT I: STRICT LIABILITY
### (A) DESIGN DEFECT

25. At all times hereinafter mentioned, plaintiff, Jamie Miccio, repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this complaint, as though more fully set forth herein at length.

26. Upon information and belief at all times herein, defendant ConAgra defectively designed the aforementioned cooking spray product, which it then placed on the market despite posing inappropriate risks.

27. Upon information and belief, the cooking spray product as designed by ConAgra and distributed and sold by other defendants (1) posed a substantial likelihood of harm; when (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury.

28. Upon information and belief, and as facts will more particularly bear out, the defendant ConAgra's design was defective in that the defendants utilized extremely flammable and combustible materials and hazardous components inclusive of, but not limited to, petroleum gas (liquefied), propane, 2-methyl- and butane, whereas alternative safer gases were available for use at or near the same cost.

29. Upon information and belief, the defendant's design of the canister involved in the explosion was a traditional three-piece design without any pressure release mechanism on the bottom of the canister.

30. Upon further information and belief, the following were feasible, alternative gases which could have been implemented by the defendant manufacturer ConAgra and/or other defendants herein all of which would have produced a safer cooking design:

(a) Non-flammable liquefied gas propellant;

(b) Solstice Propellant (INCL: Tetraflouropropene) which is a non-flammable, aerosol propellant that having both low global warming potential and low photochemical activity. The propellants full chemical name is Trans-1,3,3,3-TEreflourprop- 1 ene. It mixes with other propellants such as 134a. 152a, dimethal ether, butane, iso-butane and propane. It is also

5

mixable and compatible with many commonly used solvents like the lower alcohols, ketones, halogenated solvents and hydrocarbons, providing a variety of formulation options. It is classified as a UN class 2.2 non-flammable liquefied gas said propellant also exhibits a low order of toxicity and complies with global regulations;

(c) Dymel 134a propellant which is also non-flammable. It can be mixed with other propellants to produce a limited range of non-flammable blends or to reduce the flammability of other aerosol formulations. It is also chemically stable;

(d) US Patent 4536323 A is a propellant composition for aerosol dispensers in the form of an oil-in-water microemulsion which renders highly flammable gaseous aerosol propellants non-flammable by dissolving the gaseous propellants in a water-immiscible solvent.

(e) Carbon dioxide (also non-flammable).

31. Upon information and belief, another alternative design that could have been used by defendants is a two piece can design constructed with tin-free steel, without welded seams with special tabs on the bottom to prevent explosions and release pressure.

32. Upon information and belief, defendant ConAgra and/or other defendants failed to design said cooking spray product in a safer manner when it knew or should have known that the above-referenced alternative, safer, less flammable, and/or non-explosive ingredients were available, and when usage of same would have reduced and/or eliminated a foreseeable risk of harm.

33. That defendants knew or should have known, for a long and sufficient amount of time prior to plaintiff's accident, that the defective design of its cooking spray product contained flammable propellants, which could cause an explosion and/or fire, yet failed to take any steps to correct the aforementioned foreseeable dangerous/defective condition.

34. Defendants also could have utilized specialized tabs in the production of its spray can which allow gases to safely escape when excess pressure mounted.

35. The defendants defective design was a substantial factor in causing plaintiff's injury.

36. The defectively designed cooking spray was, at the time it left each defendants' hands, in a condition not reasonably contemplated by the ultimate consumer and was unreasonably dangerous for its intended use. Furthermore, the utility of not changing the design did not outweigh the danger inherent in its introduction into the stream of commerce.

37. Upon information and belief at all times herein, the accident was caused wholly and solely by the unreasonable acts/omission of the defendant ConAgra as well as other defendants as alleged above thereby leading to making the improper design into the streamof commerce by:

    (a)    Negligently and carelessly designing the product:

    (b)    Negligently and carelessly failing and neglecting to anticipate the dangers and defects in the design of the product;

    (c)    Negligently and carelessly causing, permitting or allowing distribution of the product;

    (d)    Negligently and carelessly packaging, preparing, manufacturing and/or distributing the product with latent, inherent and hidden defects;

    (e)    Negligently failing to test spray cans for durability and/or potential to explode.

38. The accident and injuries and damages were caused wholly and solely by said acts or omissions on the part of the defendant ConAgra and/or other defendants herein.

39. Be further advised that plaintiff also relies upon the doctrine of *Res Ipsa Loquitur,* said defendants being the only entities in control of designing the can and/or placing flammable propellants in said product; aerosol cans not unexpectedly exploding while just sitting on a shelf in the absence of negligence.

40. That by reason of the aforesaid negligence and defective design, the cooking spray canister exploded and plaintiff was rendered sick, sore, lame, and disabled and her injuries, upon information and belief, are of a permanent and disfiguring nature, that she has been obliged to incur expense and obligations for medical care, attention and treatment and continuous pain and suffering, all to her damage in a monetary sum that will be determined at trial.

## (B) MANUFACTURING DEFECT

41. At all times hereinafter mentioned, plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this complaint, as though more fully set forth herein at length.

42. Upon information and belief, and at all times mentioned hereinafter mentioned the defendants ConAgra carelessly allowed the specific can of cooking spray that injured Plaintiff to be manufactured and distributed into the stream of commerce when it (as opposed to other spray cans properly manufactured and distributed) was capable of exploding by simply sitting on a room temperature shelf.

43. Upon information and belief, and at all times mentioned hereinafter mentioned, the defendants Simoniz carelessly allowed the specific can of cooking spray that injured plaintiff to be distributed into the stream of commerce when it, as opposed to other spray cans properly

manufactured and distributed, was capable of exploding by simply sitting on a room temperature shelf and in a manner as set out herein

44. Upon information and belief at all times mentioned herein the defendant Epic Industries Inc. carelessly allowed the specific can of cooking spray that injured plaintiff to be distributed into the stream of commerce when it, as opposed to other spray cans properly manufactured and distributed, was capable of exploding by simply sitting on a room temperature shelf and in a manner as set out herein.

45. Upon information and belief at all times mentioned herein after mentioned the defendant Keck's Food Service Inc. carelessly allowed the specific can of cooking spray that injured plaintiff to be distributed into the stream of commerce when it, as opposed to other spray cans properly manufactured and distributed, was capable of exploding by simply sitting on a room temperature shelf and in a manner as set out herein.

46. Upon information and belief said defectively manufactured can exploded as the defendants failed to conduct adequate heat testing, pressure testing, and/or wall thickness testing of this particular cooking spray in violation of CFR 2011-Title 49, Volume 2, §§ 173.304, 173.306; CFR 2011-Title 49, VOLUME 3, §§ 178.33.

47. Upon information and belief, the defendants also failed to undertake a hot water bath test of this particular cooking spray can as required by 49 CFR 173.306.

48. Upon information and belief, the defendants did not undertake proper or adequate burst testing of this particular cooking spray can as required by 49 CFR 173.306.

49. Upon information and belief, if burst and/or other testing had been properly undertaken, the heat-to-burst tests would have revealed that the aforementioned cooking spray

can that injured plaintiff and/or batch of cans inclusive of the one injuring plaintiff would have been in violation of the aforementioned regulations.

50. Upon information and belief, the bottom of the cooking spray can exploded before the (typically weaker) spray nozzle at the top of the can allowed pressure to dislodge further demonstrating that said can was manufactured with a defective bottom.

51. Upon information and belief, there were various defective components with respect to the cooking spray at issue in this case, including (a) a possibly defective bottom portion of the canister, (b) a possibly defective top portion of the canister, (c) too much pressure and/or propellant in the canister, among other items.

52. Upon information and belief, said exploded cooking spray canister deviated in quality and other performance standards from all of the other like units due to a defect in the manufacturing process as noted above and/or as well improper workmanship.

53. That said exploded can is in the possession of the Waverly Police Department. Said department will not release can without a court order. Upon information and belief, additional manufacturing defects may be realized upon testing of said canister to which plaintiff currently does not have access. This includes possible defects in the metal of aluminum can.

54. The product was intended to and did reach the plaintiff without substantial modification.

55. Be advised that, plaintiff also relies upon the doctrine of *Res Ipsa Loquitur*, the defendants being in sole control of how the can was placed in the stream of commerce and also because cooking spray cans do not explode all by themselves unless some defect in their makeup existed at time of manufacture, distribution and/or eventual final sale.

56. That by reason of the aforesaid negligence and manufacturing defects, the cooking spray canister exploded and plaintiff was rendered sick, sore, lame and disabled and her injuries which, upon information and belief, are of a permanent and disfiguring nature, and plaintiff has been obliged to incur expense and obligations for medical care, attention land treatment and she is informed and she verily believes that she will in the future be obliged to incur further expense and obligations for medicines, medical care, attention and treatment and continuous pain and suffering, all to her damage in a monetary sum that will be determined at trial.

### (C) FAILURE TO WARN

57. At all times hereinafter mentioned, plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this complaint, as though more fully set forth herein at length.

58. The defendants failed to properly warn, explain, and/or instruct its/their consumers, including the plaintiff, regarding the aforementioned explosive characteristics of its/their cooking spray product.

59. Upon information and belief, the defendants' warnings, explanations and/or instructions upon its/their cooking spray product were inadequate and/or defective in that they were devoid of any content indicating the can could explode (even if not exposed to direct heat). If said warnings existed they were not written legibly, were not large enough, were not written prominently, were not in proper contrast to its/their background, were not properly provided with the product and/or otherwise defective.

60. Upon information and belief, defendant ConAgra wholly failed to affix adequate warnings to cooking spray can, and/or failed to provide commercial warnings or product inserts to the wholesaler and/or distributor who purchased said product – in other words, there was a complete absence of any warning by defendant ConAgra even though storing the spray can away from heat but near people was a danger of its foreseeable use about which it knew or should have known.

61. Upon information and belief, Epic Industries and/or Simoniz, affixed a label upon the can of cooking spray after obtaining the product from ConAgra.

62. Upon information and belief, the defendants Epic Industries and/or Simoniz likewise failed to properly affix warnings and/or instructions regarding the aforementioned explosive characteristics upon their cooking spray product, (even in the absence of direct contact with heat) even though simply storing the spray can (a) away from heat but (b) near people was a foreseeable use danger about which defendants knew or should have known.

63. The warnings and/or instructions placed upon the defendants' cooking spray product by Epic Industries and/or Simoniz were ambiguous, vague, subjective and/or otherwise defective.

64. Upon information and belief, the defendants Epic Industries and/or Simoniz failed to properly warn against the dangers of placing its/their cooking spray product on a counter or shelf within proximity to people when use and said danger was clearly foreseeable and which said defendants knew or should have known about.

65. Upon information and belief, Epic Industries and/or Simoniz failed to accurately label and warn users that the cooking spray canister may contain ingredients such as liquefied

petroleum gas, propane, butane, and/or ethanol and only listed "propellant" on the back under small print ingredients.

66. Upon information and belief, Epic Industries and/or Simoniz failed to warn and adequately label that the cooking spray canister contained "extremely flammable aerosol".

67. Upon information and belief, Keck's re-labeled the cooking spray after obtaining it from Epic Industries and/or Simoniz.

68. Upon information and belief, the defendant Keck's likewise failed to properly affix warnings and/or instructions regarding the aforementioned explosive characteristics upon its cooking spray product, mentioning nothing of the danger of instantaneous explosion (even if the product was not exposed to direct heat) if the spray can was stored near people (and not in use) this being a foreseeable use and event about which it knew or should have known.

69. The warnings and/or instructions placed upon the defendant's cooking spray product by Keck's were lacking in proper content ambiguous, vague, subjective and/or otherwise defective.

70. Upon information and belief, the defendant Keck's failed to properly warn against the dangers of placing its/their cooking spray product on a counter or shelf within proximity to people (even absent direct contact with heat), when said use and/or event was foreseeable.

71. Upon information and belief, Keck's failed to accurately label and warn users that the cooking spray canister may contain ingredients such as liquefied petroleum gas, propane, butane, and/or ethanol and only listed "propellant" on the back under small print ingredients.

72. Upon information and belief, Keck's failed to warn and adequately label that the cooking spray canister contained "extremely flammable aerosol" that should not be stored near people using a kitchen if not in direct contact with heat.

13

73. Upon information and belief, all of the defendants individually and collectively knew or should have known, for a long and unreasonable amount of time prior to plaintiff's accident, that its/their cooking spray product could cause and explosion and/or fire even when not in direct contact with heat, yet failed to affix proper warnings and/or labels of the aforementioned foreseeable dangerous/defective conditions.

74. Upon information and belief, the cooking spray involved in this fire, as designed, manufactured and/or sold by the defendants was defective in that it may also have been over-pressurized and filled with flammable contents, creating a risk of fire and burns to persons (a) using it or (b) even nearby where it may be stored.

75. At the time ConAgra designed, manufactured and/or sold the cooking spray it knew of the risk of over-pressurizing and venting of the flammable product, and yet failed to advise purchasers and users of the dangerous condition of the product.

76. Upon information and belief, ConAgra failed to accurately label and warn users that the cooking spray canister may contain ingredients such as liquefied petroleum gas, propane, butane, and/or ethanol and only listed "propellant" on the back under small print ingredients.

77. Upon information and belief, ConAgra failed to warn and adequately label that the cooking spray canister contained "extremely flammable aerosol" that should not be stored even in room temperature areas of a kitchen.

78. That by reason of the foregoing, plaintiff also relies upon the doctrine of *Res Ipsa Loquitur,* as stated aforesaid (i.e. sole control by defendants and cans not exploding absent negligence).

79. That the failure of the defendants to warn the plaintiff was the proximate cause of plaintiff's injuries.

80. That by reason of the aforesaid negligence and failure to warn, plaintiff was rendered sick, sore, lame and disabled and her injuries, upon information and belief, are of a permanent nature. Furthermore plaintiff has been obliged to incur expense and obligations for medical care, attention and treatment and she is informed and she verily believes that she will in the future be obliged to incur further expense and obligations for medicines, medical care, attention and treatment and continuous pain suffering, all to her damage in a monetary sum that will be determined at trial.

## COUNT II: IMPLIED WARRANTY OF FITNESS AND MERCHANTABILITY

81. At all times hereinafter mentioned, plaintiff, Jamie Miccio, repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this complaint, as though more fully set forth herein at length, including but not limited to allegations of improper design and/or manufacturing defect.

82. Said cooking spray was also sold with an implied warranty of fitness (UCC 2-314) and/or implied warranty of merchantability (UCC 2-316) that the product was fit for the ordinary purpose for which such goods are used and would provide a minimum level of quality to the end user (here being the plaintiff) and/or was otherwise of merchantable quality at time of sale/distribution.

83. The defendants ConAgra, Epic Industries, Simoniz, and/or Keck's were manufacturers, vendors or merchants of said cooking spray and sold similar goods on numerous occasions some of which, upon information and belief, also suddenly and improperly exploded.

84. That the defendant ConAgra was involved in the manufacturing, selling, and/or distribution of said cooking spray.

85. That the defendant Epic Industries and/or Simoniz was involved in the selling, and/or distribution of said cooking spray.

86. That the defendant Keck's was involved in the selling, and/or distribution of said cooking spray.

87. That at time of each successive sale and/or distribution the defendants breached said implied warranties of either (a) merchantability and/or (b) fitness as said cooking spray product was neither minimally safe for its expected purpose or of merchantable quality as upon time of sale(s). Specifically, the defendants impliedly warranted that cooking spray was safe for normal use as well as room temperature storage on shelves and that said product would not self-ignite nor explode causing injury.

88. Said defects existed when the canister was delivered to the end-user, plaintiff.

89. Plaintiff repeats above allegations indicating that (a) the product injuring plaintiff was defectively designed or manufactured and (b) that said defect or defects existed when provided to its user/final purchaser.

90. That the plaintiff's injuries were a specific result and proximately caused by the deviation and breach of the implied warranties of merchantability and/or fitness.

91. That by reason of breach of warranties, this plaintiff was rendered sick, sore, lame and disabled and her injuries, upon information and belief, are of a permanent nature, that she has been obliged to incur expense and obligations for medical care, attention and treatment and she is informed and she verily believes that she will in the future be obliged to incur further expense and obligations for medicines, medical care, attention and treatment and continuous pain suffering, all to her damage in a monetary sum that will be determined at trial.

## III: NEGLIGENCE

92. At all times hereinafter mentioned, plaintiff, Jamie Miccio, repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs of this complaint, as though more fully set forth herein at length, including but not limited to allegations of improper design and/or manufacturing defect.

93. That all defendants were negligent in by not immediately recalling said product and terminating sales upon learning that its product could explode at room temperatures.

94. Upon information and belief at all times herein, the accident was caused wholly and solely by the unreasonable acts/omission of the defendant ConAgra as well as other defendants as alleged above in:

    (a)    Negligently and carelessly designing the product:

    (b)    Negligently and carelessly failing and neglecting to anticipate the dangers and defects in the design of the product;

    (c)    Negligently and carelessly causing, permitting or allowing distribution of the product;

    (d)    Negligently and carelessly packaging, preparing, manufacturing and/or distributing the product with latent, inherent and hidden defects;

    (e)    Negligently failing to test spray cans for durability

109. That by reason of negligence of warranties, this plaintiff was rendered sick, sore, lame and disabled and her injuries, upon information and belief, are of a permanent nature, that she has been obliged to incur expense and obligations for medical care, attention and treatment and she is informed and she verily believes that she will in the future be obliged to incur further

expense and obligations for medicines, medical care, attention and treatment and continuous pain suffering, all to her damage in a monetary sum that will be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiff prays for judgment against the defendants as follows:

(a) Awarding compensatory damages in a sum exceeding $75,000 in amount.

(b) Awarding the costs and expenses of this litigation to plaintiff.

(C) Granting all such other relief as the Court deems necessary, just, and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: December 27, 2016					WELCH, DONLON & CZARPLES PLLC

								_____
								Anna Czarples, Esq.
								Attorney for Plaintiff
								8 Denison Parkway E, Suite 203
								Corning, New York 14830
								Phone: 607-936-8057
								Email: anna@wdcinjurylaw.com